UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CARLOS VILLANUEVA,

Plaintiff,

- against -

WELLS FARGO BANK, N.A., *et al.*,

Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
25-CV-6383 (PKC) (MMH)

PAMELA K. CHEN, United States District Judge:

The Court is in receipt of Plaintiff's Second Motion to Amend his Complaint, (Dkt. 26). Because Plaintiff's proposed Second Amended Complaint ("SAC") has not rectified the deficiencies previously identified by the Court, and still fails to state a claim, the Court denies Plaintiff's Second Motion to Amend and directs the Clerk of Court to enter judgment and close this case.

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[l]eave to amend may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Leave to amend is futile if the amended complaint "'would be subject to dismissal for failure to state a [claim] upon which relief may be granted' and therefore could not survive a [Rule] 12(b)(6) motion to dismiss." *Doyle v. United Airlines, Inc.*, 914 F. Supp. 2d 325, 333 (E.D.N.Y. 2012) (quoting *Candelaria v. Spurlock*, No. 08-CV-1830 (BMC) (RER), 2008 WL 2640471, at *5 (E.D.N.Y. July 3, 2008)).

To survive Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face where it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In reviewing a complaint for failure to state a claim, the Court accepts as true all factual allegations and draws from them all reasonable inferences, while disregarding "conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester County*, 3 F.4th 86, 90–91 (2d Cir. 2021) (quoting *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020)).

## DISCUSSION

In his proposed SAC, Plaintiff asserts violations of the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), and 42 U.S.C. §§ 1983 and 1985 ("Sections 1983 and 1985"), along with claims of civil conspiracy, breach of fiduciary duty, and fraud in the inducement claims. (*See generally* SAC, Dkt. 26-4.)[1]

### I. Plaintiff's RESPA Claim

Plaintiff now alleges that Defendants Wells Fargo Bank ("Wells Fargo") and Wells Fargo Directors Steven D. Black, Mark A. Chancy, and Theodore F. Craver, Jr. (the "Individual Defendants") (collectively, "Wells Fargo Defendants") violated "Section 6" of RESPA. (*Id.* ¶¶ 102–110.) Section 6 of RESPA, codified at 12 U.S.C. § 2605, *Sutton v. CitiMortgage, Inc.*, 228

[1] The Court assumes the parties' familiarity with the relevant facts and procedural history, (*see* Memorandum and Order ("M&O"), Dkt. 25), and recites only those facts necessary to explain this decision.

F. Supp. 3d 254, 261 (S.D.N.Y. 2017), requires, *inter alia*, mortgage servicers to adequately respond to a Qualified Written Request ("QWR"), 12 U.S.C. § 2605(e).[2]

Plaintiff fails to plead a valid RESPA claim against any Wells Fargo Defendant. First, Plaintiff fails to plead that the Wells Fargo Defendants were *servicers* of Plaintiff's mortgage, and therefore he cannot raise any claim under Section 6 of RESPA against them. (*See* SAC, Dkt. 26-4, ¶ 2 (conclusorily and vaguely alleging Defendants Wells Fargo, Nationstar Mortgage LLC ("Nationstar"),[3] and Resource One Inc. "participated in originating, acquiring, servicing, enforcing, assigning, or otherwise administering a mortgage loan")); *Scalercio-Isenberg v. Goldman Sachs Mortg. Co.*, No. 21-CV-4124 (KPF), 2022 WL 3227875, at *16 (S.D.N.Y. Aug. 9, 2022) (dismissing RESPA claim for failing to allege that Defendants were mortgage servicers and therefore subject to liability under 12 U.S.C. § 2605).

Second, Plaintiff fails to identify an actual QWR that the Wells Fargo Defendants failed to respond to. Although Plaintiff alleges that his "agent" sent an email to the Individual Defendants on February 13, 2025 requesting that they and Wells Fargo "address the fraudulent concealment

[2] Again, Plaintiff alludes to other potential RESPA violations, (*see* SAC, Dkt. 26-4, ¶ 103) (discussing Wells Fargo and Nationstar Mortgage LLC's failure to disclose that the seller did not have capacity to transfer title)), but his allegations are too conclusory to state a claim, (M&O, Dkt. 25, at 10). Again, Plaintiff alleges, for example, that "Defendants benefited financially from servicing fees, interest, [and] quick payments from mortgage insurance carriers[.]" (SAC, Dkt. 26-4, ¶ 86.) Although RESPA prohibits giving or accepting a "fee, kickback, or thing of value" for a referral involving a "federally related mortgage loan," *see* 12 U.S.C. § 2607(a), it is entirely unclear if that is what Plaintiff is alleging here, and Plaintiff has not alleged what these benefits entailed such that the Court could infer a cognizable RESPA claim, *see* (M&O, Dkt. 25, at 10) (same); *see also Henry v. Flagstar Bank, FSB*, No. 16-CV-1504 (JMA) (AKT), 2017 WL 11886155, at *7 (E.D.N.Y. Aug. 28, 2017) (dismissing allegations that the defendants "otherwise obtain[ed] yield spread fees, excess charges and amounts in excess of what would have been lawfully earned" because plaintiffs "fail[ed] to provide any factual context for these general accusations" and "fail[ed] to specify which provision of the RESPA CitiMortgage allegedly violated with respect to these charges").

[3] Plaintiff refers to Nationstar as doing business as "Mr. Cooper," (SAC, Dkt. 26-4, ¶ 2.)

of the title issue," (SAC, Dkt. 26-4, ¶¶ 87–88), this email, sent by someone named "Neal Wright"—which Plaintiff attached to his first motion to amend and again submits with this motion—does not qualify as a QWR. (Dkt. 26-6; *see also* Dkt. 24-5 (attaching email to first motion to amend); M&O, Dkt. 25, at 12 n.7 (flagging this defect).) That email reads:

> Attention Board Members,
>
> We are writing in order to inform you of a matter that is in need of your attention. Wells Fargo, it's [sic] employees and others have perpetrated a series of recycled illegal mortgages which led to foreclosures on the aforementioned property. This property has been financed on at least three occasions by Wells Fargo, only to result in three separate foreclosures. Currently, this property is scheduled for a foreclosure auction on February 20,[ ]2025!
>
> I am submitting an affidavit of facts by attorney Lawrence Spivak and a copy of notice of sale. (Attachments)
>
> Please note that the property purchased with a purchase mortgage funded by you to Carlos Villanueva and Mr. Lopez his brother.
>
> However, the title clearly shows that the seller was not the owner of the property at the time of purchase!
>
> Your current counsel and others have decided to cover[ ]up this fact and foreclose on mortgage instead of filing a title claim because of the Fraud.
>
> I am bringing this to your attention as my company has a[n] interest in the property and [ ] foreclosure would cause me irreparable harm. I believe this matter could be worked out through insurance and negotiating without lengthy lawsuits. Please investigate. Additionally, I ask that you postpone auction until all facts are reviewed. Thank You.

(Dkt. 26-6.) This email fails to constitute a QWR for at least two reasons. First, the email concerns title defects that Wells Fargo allegedly covered up, rather than requesting "information relating to the servicing of [a federally related mortgage] loan." 12 U.S.C. § 2605(e)(1)(A); *see also Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-CV-3291 (NGG) (SMG), 2014 WL 4742509, at *7 n.11 (E.D.N.Y. Sep. 23, 2014) (collecting cases dismissing RESPA claims where communication sent

did not concern servicing of the loan and instead concerned the validity of the loan); *Bravo v. MERSCORP, Inc.*, No. 12-CV-0884 (ENV) (LB), 2013 WL 1652325, at *3 (E.D.N.Y. Apr. 16, 2013) (similar). Second, the email, as Plaintiff admits, was not sent to the "formal mailing address" that Wells Fargo had designated for receiving QWRs. (SAC, Dkt. 26-4, ¶ 89); *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181–82 (2d Cir. 2014) (explaining that RESPA allows loan servicers to designate a QWR address, and if a servicer does so, letters sent to a different address are not QWRs).[4]

Accordingly, the proposed SAC fails to state a claim under Section 6 of RESPA.

## II. TILA Claim

Plaintiff alleges that Defendants Wells Fargo, Nationstar, and Stewart Title Guaranty Company ("Stewart Title") violated the TILA. Again, the proposed SAC does not outline which provision(s) of TILA these Defendants allegedly violated. (*See generally* SAC, Dkt. 26-4, ¶¶ 111–16.) Plaintiff appears to challenge representations made by these Defendants when Plaintiff obtained his mortgage in *2009*. (*See id.* ¶¶ 28–44, 111–15.) As the Court previously noted, "claims under the TILA must be brought within '1 year from the date of the occurrence of the violation.'" (M&O, Dkt. 25, at 7 (quoting 15 U.S.C. § 1640(e))).[5] Even assuming the Court could discern the statutory source for the "violation" at issue here—obliquely referred to as failure to

[4] That sending a formal mailing would have been "futile" because it would have "been received by Wells Fargo after the auction date," (SAC, Dkt. 26-4, ¶ 89), is no excuse for failing to send the QWR to the correct address.

[5] Again, the Court notes that certain TILA violations arising under the Home Ownership Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639, have a statute of limitations of three years, *id.* § 1640(e). As the Court previously noted, "Plaintiff does not specify which parts of the TILA Defendants have violated, nor does Plaintiff allege anything that would place his claims within HOEPA and its limitations period." (M&O, Dkt. 25, at 7 n.3.) This remains the same for Plaintiff's proposed SAC.

disclose another party's superior interest and failure to disclose "loan transaction and title charges," (SAC, Dkt. 26-4, ¶¶ 113–14)—the "violation" at issue appears to have occurred in 2009 and thus is time-barred.

Plaintiff seemingly concedes that the statute of limitations has expired, (*see id.* ¶ 115), and asks the Court to toll the limitations to June 23, 2026, (*id.*), when Wells Fargo allegedly admitted the concealed information in a quiet title action, (*id.* ¶¶ 92, 115). However, as the Court previously explained, to toll the limitations period, Plaintiff must show that he "remained in ignorance of [the TILA] cause of action until some point within [the applicable statutory period] of the commencement of his action." (M&O, Dkt. 25, at 8 (quoting *Cardiello v. The Money Store, Inc.*, No. 00-CV-7332 (NRB), 2001 WL 604007, at *1 (S.D.N.Y. June 1, 2001)).) Here, Plaintiff admits that he discovered Defendants' omissions concerning title in April 2023. (*See* SAC, Dkt. 26-4, ¶ 72.) In other words, he was only ignorant of the potential TILA action until 2023, (*id.*), and thus the statute of limitations, even if tolled, expired in 2024, well before this action was filed in November 2025.[6] Accordingly, Plaintiff's TILA claims are time-barred. *See Alexander v. Nationstar Mortg., LLC*, No. 16-CV-2607 (LTS) (JLC), 2017 WL 6568057, at *3 (S.D.N.Y. Dec. 22, 2017) (dismissing TILA claim because "even if the statute of limitations had been tolled by

---

[6] That Wells Fargo continued to deny withholding title defects until 2026, (SAC, Dkt. 26-4, ¶¶ 76–85), is of no relevance to tolling once Plaintiff became aware of the alleged fraudulent concealment. *Cf. Varabiev v. Bank Bank Leumile Isr. (Switz.)*, No. 03-CV-3063 (SAS), 2004 WL 936804, at *4 (S.D.N.Y. Apr. 30, 2004) ("[B]ecause no amount of concealment on [d]efendants' part could have been effective after [plaintiff] actually discovered the alleged fraud, [plaintiff's] request for equitable tolling of the statute of limitations cannot be granted."); *Papapietro v. Popular Mortg. Servicing Co.*, No. 13-CV-2433 (SLT) (RML), 2014 WL 5824682, at *9 (E.D.N.Y. Nov. 10, 2014) (explaining that doctrine of fraudulent concealment will not toll the statute of limitations for a TILA claim "once the plaintiff knows of the operative facts that form the basis of his claim such that he could discover his cause of action through the exercise of diligence" (citation omitted)), *aff'd sub nom. Papapietro v. Litton Loan Servicing, LP*, No. 20-1179, 2022 WL 1421404 (2d Cir. May 5, 2022).

reason of [d]efendants' conduct, [p]laintiffs' discovery of the alleged TILA violations in 2014[, two years before the complaint was filed,] eliminated any continuing basis for such tolling").

**III. Plaintiff's "Conspiracy" Claim**

As before, Plaintiff's proposed SAC asserts a "conspiracy [by the Wells Fargo Defendants and Nationstar] . . . to deprive Plaintiff's civil rights" without specifying what statute(s) this claim is being brought under. (M&O, Dkt. 25, at 11 n.6; SAC, Dkt. 26-4, ¶¶ 6, 148–53.) Assuming, *arguendo*, Plaintiff is asserting conspiracy under Sections 1983 and 1985, he fails to state a claim for relief for the same reasons that the Court previously identified in connection with his proposed First Amended Complaint. As the Court explained then:

> To the extent Plaintiff raises a claim under "Section[] 1983," Plaintiff has not alleged that any of the entities are suable "persons" under those statutes. *See Kamdem-Ouaffo v. Baker Botts, L.L.P.*, No. 23-CV-2008 (CS), 2023 WL 5803709, at *1 (S.D.N.Y. Sep. 7, 2023) (rejecting attempt to bring Section 1983 suit against bank and debt collectors because they were not state actors), *aff'd sub nom. Kamdem-Ouaffo v. Baker Botts LLP*, No. 23-7753, 2024 WL 4948574 (2d Cir. Dec. 3, 2024). Plaintiff also has not alleged a Section 1985 violation because the [proposed First Amended Complaint] contains no allegations that the Defendants conspired to "depriv[e], either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," conspired to interfere with a federal officer's discharge of their official duties, or conspired to intimidate or influence any witness, party, or juror in a federal case. 42 U.S.C. § 1985.

(M&O, Dkt. 25, at 11 n.6. (second alteration added).) Here, Plaintiff again fails to allege that any Defendants are suable entities under Section 1983. The mere fact that Defendants "used the state court as an instrument" to allegedly deprive Plaintiff of his property, (SAC, Dkt. 26-4, ¶ 150), is insufficient to allege action under color of law pursuant to Section 1983. *Kamasinski v. Rubin*, 764 F. Supp. 741, 743 (D. Conn. 1991) ("[U]se by a private party of the state courts for litigation 'does not clothe persons who use its judicial processes with the authority of the state,' as contemplated under the [Section] 1983 state action requirement." (citation omitted)), *aff'd*, 962

F.2d 3 (2d Cir. 1992); *accord Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 516 (S.D.N.Y. 2016). And although Plaintiff's proposed SAC now reiterates some of the statutory language in Section 1985(3), (*see* SAC, Dkt. 26-4, ¶ 149 ("Defendants . . . misused the state court to perpetrate a fraud upon Plaintiff and to deprive him of his privileges and immunities as a citizen of the United States")), Plaintiff fails to allege that the conspiracy, if any, was "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus," *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citation modified) (outlining requirements to allege violation of Section 1985(3)); *see Piscitello v. Giannetti*, No. 15-CV-3989 (SJF) (ARL), 2016 WL 1559156, at *8 (E.D.N.Y. Apr. 18, 2016) (dismissing Section 1985(3) claim for this reason).

Accordingly, Plaintiff's proposed SAC does not state any "conspiracy" claim.

## IV. Plaintiff Cannot Seek Declaratory Relief

Plaintiff's proposed SAC again seeks declaratory relief that the "Judgment of Foreclosure and Sale rendered in the state action and the subsequent auction sale are void due to Defendants' misconduct." (SAC, Dkt. 26, ¶ 147.) The Court reiterates—for the third time now—that the *Rooker-Feldman* doctrine bars the Court from declaring the foreclosure judgment and subsequent sale void. *See Ford v. U.S. Dep't of Treasury I.R.S.*, 50 F. App'x 490, 491 (2d Cir. 2002) (summary order) (affirming dismissal where plaintiff sought a "declaration that the foreclosure judgment [wa]s void, thereby requiring reversal of the state court foreclosure judgment"). Plaintiff cannot seek declaratory relief.

## V. Plaintiff's State Law Claims

Plaintiff invokes diversity jurisdiction to assert state law claims against Defendants. (SAC, Dkt. 26-4, ¶ 7.) However, Plaintiff has again failed to allege the diversity of all Defendants against

whom he brings allegations.[7] In particular, Plaintiff alleges that "Defendant Nationstar . . . conducts mortgage servicing and lending activities throughout New York State and is a citizen of Delaware." (SAC, Dkt. 26-4, ¶ 13.) This allegation is insufficient to plead the citizenship of Nationstar, a limited liability company. "It is well established that a limited liability company ('LLC') is deemed to be a citizen of each state of which its members are citizens." *Ricci v. FVP Invs., LLC*, No. 1:25-CV-5542 (JLR), 2025 WL 1866906, at *1 (S.D.N.Y. July 7, 2025) (collecting cases). Failure to allege the membership of an LLC, and the citizenship of those members, is fatal to invoking diversity jurisdiction. *See id.*; *Menna v. Stop & Shop Supermarket Co., LLC*, No. 23-CV-10333 (KMK), 2024 WL 3347299, at *2 (S.D.N.Y. July 9, 2024) (collecting cases reaching same decision). Here, because Plaintiff has not alleged the membership of Nationstar and the citizenship of its members, the Court cannot find that there is diversity jurisdiction. *See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998) (requiring complete diversity between the plaintiff and defendants to invoke diversity jurisdiction). Plaintiff's only basis for jurisdiction is therefore federal question jurisdiction, which, as discussed above, is not established in the proposed SAC.

Because the Court dismisses Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c). Plaintiff may choose to pursue these claims in state court, and the Court expresses no opinion on their merits.

---

[7] Plaintiff also failed to allege diversity jurisdiction in his proposed First Amended Complaint, and therefore the Court analyzed his claims pursuant to federal question jurisdiction. (*See* M&O, Dkt. 25, at 11 (considering only federal question jurisdiction).) The Court did not explicitly detail the reasons for declining to exercise diversity jurisdiction, but it noted that the number of deficiencies in Plaintiff's proposed First Amended Complaint were too numerous to detail, and for that reason, it did not "identify all of [the] reasons" it denied leave to amend. (*Id.* at 4.)

**LEAVE TO AMEND DENIED**

As the Court previously noted, Plaintiff's proposed SAC was to be the "final opportunity to seek leave to file an amended complaint that states a claim upon which relief can be granted." (M&O, Dkt. 25, at 11.) The Court has previously given Plaintiff *two* opportunities to amend his Complaint with the assistance of counsel. (*Id.* at 3.) Plaintiff's counsel was cautioned to "heed the Court's discussion of why [Plaintiff's] claims as currently pled [in the proposed First Amended Complaint] are deficient, and not simply attempt to file a complaint with the same deficiencies." (*Id.* at 11–12.) But Plaintiff's proposed SAC, though rectifying *some* of the deficiencies the Court outlined, fails to address most of its defects. The Court declines to grant leave to amend yet again, in light of the fact that Plaintiff is counseled, has been on notice of the defects in his pleadings, and continues to submit defective pleadings.

**CONCLUSION**

For the foregoing reasons, the Court denies Plaintiff leave to file the proposed Second Amended Complaint, (Dkt. 26), because it still fails to state any viable claim for relief. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: October 7, 2026
Brooklyn, New York